168 N.J. Super. 344 (1979)
403 A.2d 24
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANDREW ROMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1979.
Reargued March 27, 1979.
Decided April 18, 1979.
*345 Before Judges HALPERN, ARD and ANTELL.
*346 Mr. Stanford M. Singer, Assistant Deputy Public Defender, argued the cause for the appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Brian C. Matthews, Assistant Prosecutor, argued the cause for the respondent (Mr. John J. Degnan, Attorney General, attorney; Mr. Donald S. Coburn, Essex County Prosecutor, of counsel).
The opinion of the court was delivered by ARD, J.A.D.
Tried to a jury, defendant was found guilty of first degree murder (N.J.S.A. 2A:113-1 and 2) and murder while armed (N.J.S.A. 2A:151-5). He received the mandatory life sentence and a concurrent 3-5-year State Prison term on the armed feature of the offense. On appeal he alleges:

 POINT I The rule providing that the defendant shall have the
 burden of proving insanity by a preponderance of
 evidence is violative of State Constitutional
 guarantees of due process of law and should be
 abolished.
 POINT II The trial court erred in failing to charge the jury
 that voluntary use of drugs can operate to reduce the
 degree of culpability from first to second degree
 murder. (Partially raised below).
 POINT III The trial court erred in failing to instruct the jury
 that a defendant's mental illness can operate to reduce
 the degree of culpability from first to second degree
 murder. (Not raised below).
 POINT IV The trial court erred in refusing to recall the jury to
 question them as to possible influence from media
 broadcasts.
 POINT V The trial court erred in refusing to question veniremen
 as to attitudes towards actors.
 POINT VI The verdict was against the weight of evidence.
 POINT VII The mandatory life term imposed for murder in the first
 degree constitutes a denial of due process of law.

Although the allegation of error set forth in Point VII is moot in light of our decision in this case, we point out that New Jersey's statutory sentencing scheme dealing with murder has been recently upheld in Corbitt v. New Jersey, ___ U.S. ___, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). *347 Such being the case, we need not discuss it further. With the exception of Points II and III, we are satisfied that the remaining issues raised by defendant are also clearly without merit. R. 2:11-3(e) (2).
Defendant and decedent Mary Bruen met in the fall of 1972 while both were attending Montclair State College. A close relationship ensued which ultimately resulted in the two living together for a period of about three years.
In July 1975 defendant's mother was found to have terminal cancer. She required daily radium treatments for which defendant would drive her to and from the hospital. In March of the following year decedent moved from the apartment she shared with defendant, apparently to care for her own father. As a consequence, the couple's relationship gradually deteriorated to the point where they were no longer "boyfriend and girlfriend," but rather, "just friends."
By May and June of 1976, apparently in response to the foregoing events, there was a marked change in both defendant's physical and emotional behavior. Defendant often discussed suicide with his friends and relatives and was given to sudden fits of crying and depression. He sought medical and psychiatric assistance from several doctors. Two doctors, apparently each without knowledge of the other, prescribed Tofranil, an antidepressant, and Tranxene, a tranquilizer.
On August 8, 1976, at about 6 P.M., decedent and several of her relatives visited defendant. A short time thereafter decedent's relatives departed, leaving the two alone at defendant's apartment.
At about 8 P.M. that evening, Barbara Clark, defendant's cousin, received a telephone call from defendant. She stated that defendant sounded "groggy" and that he informed both her and her husband that he had shot and killed decedent. He was subsequently indicted on the aforementioned charges.
Although defendant entered a general denial to the charges, his primary defense was "not guilty by reason of insanity." In the course of the trial substantial testimony was *348 adduced by the defense indicating a general deterioration of defendant's mental health as well as his use of various drugs. It was urged that he was under substantial stress caused by the serious illness of his mother as well as a change in his relationship with the deceased. Testimony was adduced corroborating his marked emotional and physical change during the course of his mother's hospitalization, and several witnesses testified as to his depression and discussion of suicide. As noted, he sought psychiatric help from several physicians before the murder.
The defense called three psychiatric experts who testified that defendant was legally insane, consistent with the M'Naghten concept as enunciated in State v. Lucas, 30 N.J. 37, 72 (1959). Moreover, evidence was adduced that defendant had been ingesting excessive amounts of Tranxene and Tofranil which could result in dangerous side effects in view of his underlying psychotic condition.[1] Notwithstanding this testimony, the jury found defendant guilty of murder in the first degree.
The trial judge's charge to the jury included the classical instructions concerning both murder in the second degree and murder in the first degree, as well as the defense of legal insanity. However, notwithstanding the evidence of defendant's drug abuse, the court failed to instruct the jury that the voluntary use of drugs may be considered "in determining whether the defendant in fact performed the mental operations necessary to raise a murder from second degree to first degree. * * *" State v. Maik, 60 N.J. 203, 215 (1972). He also neglected to instruct the jury on the relevancy of evidence of mental illness upon the issue of whether second degree murder could be elevated to first degree murder after the jury determined that evidence was insufficient to establish *349 legal insanity. State v. DiPaolo, 34 N.J. 279, 294-297 (1961). There was no objection to either omission, and defendant now asserts plain error.
The general rule is that a defendant will not be excused or relieved of criminal responsibility because he was under the influence of intoxicating liquors or drugs voluntarily taken. State v. Stasio, 78 N.J. 467 (1979). The Stasio case also adopted the four basic exceptions to this general rule first mentioned by former Chief Justice Weintraub in State v. Maik, supra:
The Chief Justice set forth four exceptions to the general rule. First, when drugs being taken for medication produce unexpected or bizarre results, no public interest is served by punishing the defendant since there is no likelihood of repetition. Second, if intoxication so impairs a defendant's mental faculties that he does not possess the wilfulness, deliberation and premeditation necessary to prove first degree murder, a homicide cannot be raised to first degree murder. State v. Sinclair, 49 N.J. 525, 544 (1967); State v. Trantino, 44 N.J. 358, 369 (1965), cert. den. 382 U.S. 993, 86 S.Ct. 573, 15 L.Ed.2d 479 (1966). Under this exception the influence of liquor "no matter how pervasive that influence may be, will not lead to an acquittal. It cannot reduce the crime below murder in the second degree, and this because of the demands of public security." State v. Maik, supra, 60 N.J. at 215. Third, a felony homicide will be reduced to second degree murder when intoxication precludes formation of the underlying felonious intent. Parenthetically, it may be noted that since voluntary intoxication does not eliminate responsibility for the felony, it could be contended that the defendant should remain liable for first degree felony murder. On the other hand, considerations of fairness indicate that such a defendant should be treated the same as one charged with ordinary first degree homicide requiring premeditation. Fourth, the defense of insanity is available when the voluntary use of the intoxicant or drug results in a fixed state of insanity after the influence of the intoxicant or drug has spent itself. * * * [State v. Stasio, supra at 473].
Once the jury concluded beyond a reasonable doubt that defendant was guilty of murder in the second degree, it was the State's obligation to prove that defendant performed the mental operations necessary to raise the murder from second degree to first degree. As Justice Pashman stated *350 in his concurring opinion in State v. Polk, 78 N.J. 539, 540 (1979), aff'g o.b. 164 N.J. Super. 457 (App. Div. 1977):
Indeed, this conclusion is conceptually sound. It is elementary that in a first degree murder prosecution the State bears the burden of proving the existence of willfulness, deliberation and premeditation. See, e.g., State v. Christener, 71 N.J. 55, 64-65 (1976). If an accused did not in fact possess these mental attributes, the prosecution must fail. Thus, irrespective of a defendant's physical capability to form the requisite mental state, if he did not in fact possess that state due to intoxication, he cannot be convicted of first degree murder. Instead, he can be convicted only of murder in the second degree.
It has been consistently held that the legal consequences are the same whether the evidence deals with voluntary intoxication or the voluntary use of drugs. State v. White, 27 N.J. 158, 165-166 (1958).
After canvassing the record, we are satisfied that a reasonable jury might have found defendant to be so influenced by drugs as to not in fact be able to perform the necessary mental operations to elevate the crime to murder in the first degree. The trial judge, by failing to instruct the jury on the effect of such a finding, committed plain error. R. 2:10-2; State v. Polk, supra; State v. Macon, 57 N.J. 325, 337 (1971).
Defendant makes the same argument with respect to the relevancy of the insanity evidence concerning the question of his guilt of first degree murder. He argues, and we agree, that even though the jury determined that he was legally sane as defined by M'Naghten, the evidence of his mental disorder required the trial judge to instruct the jury that they might consider this in determining whether the State had proved beyond a reasonable doubt that defendant in fact performed the three mental operations necessary to elevate the crime to first degree murder. The court in State v. DiPaolo, supra, required the admission of this evidence as relevant to the charge of first degree murder.
*351 The three mental operations we have just described are matters of fact. The judiciary cannot bar evidence which rationally bears upon the factual inquiry the Legislature has ordered. The capacity of an individual to premeditate, to deliberate, or to will to execute a homicidal design, or any deficiency in that capacity, may bear upon the question whether he in fact did so act. Hence evidence of any defect, deficiency, trait, condition, or illness which rationally bears upon the question whether those mental operations did in fact occur must be accepted. Such evidence could be excluded only upon the thesis that it is too unreliable for the courtroom, a thesis which would not square with the universal acceptance of medical and lay testimony upon the larger issue whether there was a total lack of criminal responsibility. Weihofen, Mental Disorders as a Criminal Defense 176 (1954). [State v. DiPaolo, supra, 34 N.J. at 295; emphasis original].
Our review of the record satisfies us that the medical evidence in this case passed the test of reliability required for its admission. State v. Sikora, 44 N.J. 453 (1965). Thus, even though defendant's mental condition or illness was not accepted by the jury as legal insanity and therefore as a defense to the charge of murder, that same evidence was pertinent and relevant to the factual inquiry concerning defendant's ability to premeditate, deliberate and willfully execute the plan to kill. We discern no difference between this principle and the effect of the voluntary use of drugs on the question of first degree murder.
In sum, the omission of instructions concerning the first degree murder charge with reference to the voluntary use of drugs as well as the evidence of defendant's mental illness had the clear capacity to prejudice defendant and was plain error with respect to the conviction of first degree murder.
Unquestionably, the defendant is guilty of murder in the second degree. Before the jury could consider defendant's guilt of first degree murder, it was necessary for them to be satisfied beyond a reasonable doubt that defendant was guilty of murder in the second degree. State v. Gardner, 51 N.J. 444, 459 (1968). Thus, there is no question of guilt. As previously discussed, the errors in the instructions pertained only to the State's burden in elevating the crime to *352 first degree murder. However, the failure to so charge the jury did not work to deprive the defendant of his fundamental right to a fair trial. Rather, since the jury obviously rejected defendant's general denial, as well as his contention of being not guilty by reason of insanity, the most the omitted changes could have done for defendant was to give the jury the option of returning a verdict of murder in the second degree rather than murder in the first degree.
In response to the court's inquiry during reargument, the State has advised us that in the event we found error which invalidated the first degree murder conviction, it preferred not to retry the entire case. It requested the court to mold the verdict to second degree murder. Accordingly, there being no other error, we conceive that the administration of justice would best be served by reducing the conviction to murder in the second degree. It is so adjudged, and the matter is remanded for resentencing by the trial court. State v. Washington, 60 N.J. 170, 173 (1972); State v. Hauser, 147 N.J. Super. 221, 227-229 (App. Div. 1977), certif. den. 75 N.J. 27, 28 (1977). See also, State v. Laws, 50 N.J. 159 (1967), reargued 51 N.J. 494 (1968), cert. den. 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968); cf. United States v. Perkins, 162 U.S. App. D.C. 321, 498 F.2d 1054, 1058-1059 (1974); Austin v. United States, 127 U.S. App. D.C. 180, 382 F.2d 129, 140-143 (1967).
Except as herein modified, the judgment below is affirmed. The matter is remanded for sentencing.
NOTES
[1] There was substantial testimony of defendant's drug abuse prior to the killing. In addition, shortly after the killing, the police found empty drug containers strewn over the floor, and defendant in a semi-conscious state.