380 A.2d 338

**COMMONWEALTH of Pennsylvania**

v.

**William Robert GEIGER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 23, 1977.

Decided Dec. 1, 1977.

250

---

William H. Nast, Jr., Harrisburg, for appellant.

C. Joseph Rehkamp, Dist. Atty., New Bloomfield, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant William Robert Geiger pleaded guilty to murder generally in the shooting death on April 26, 1975, at Muriel's Horseshoe Bar, located on a rural highway in Watts Township, Perry County, of Muriel A. Knox, the establishment's proprietor. The court accepted the plea and, after a degree-of-guilt hearing, found Geiger guilty of murder of the second degree. Post-verdict motions were denied, and the court imposed a mandatory sentence of life imprisonment. See 18 Pa.C.S.A. § 1102(b) (Supp. 1977–78). This direct appeal followed.

The evidence adduced at the degree-of-guilt hearing indicates the following essentially uncontradicted facts. Shortly before 3:00 p. m. on April 26, 1975, Geiger and Harry Richard Englert, Jr., were passengers in a brown Pontiac owned and operated by a 17-year-old female companion which stopped in the parking lot of Muriel's Horseshoe Bar. Geiger entered the bar alone, went to the restroom, and then returned to the car without ordering anything. He was observed by the bar's only customer at the time and by Knox. The customer observed through a window that Geiger and his two companions remained seated in the car for some time. He became suspicious and suggested to Knox that she write down the license number of the car, which she did. Englert subsequently entered the bar alone, ordered and paid for a beer, and went to the restroom. He then took one sip of his beer without sitting down, asked Knox where he could find a cheap motel, and left. The customer next observed the brown Pontiac with its three occupants backing toward the building. He left the bar, entered his own car, and drove to the nearby barracks of the Pennsylvania State Police to report what he had observed and request help.

Meanwhile, Englert told his female companion that "he knew that [she] didn't want him to do it but he had to," took the keys to the Pontiac and a 30–30 Winchester rifle, and, together with Geiger, re-entered the bar. Shortly thereaft-

er, a trooper from the barracks arrived at the parking lot, and through the window of the establishment he observed Englert, rifle in hand, jumping over the bar. He promptly called his station and requested assistance. Englert emerged from the front door followed by Geiger and pointed the rifle at the trooper, but he did not fire. Englert climbed into the front of the car, Geiger into the back, and Englert returned the keys to his female companion and told her to drive away. The Pontiac drove away with two police cars in hot pursuit, a second car containing two officers having arrived just as the pair entered the Pontiac. During the ensuing 7-mile chase, Englert repeatedly pointed the rifle out the window in the direction of the pursuing officers, though he did not shoot. Eventually one of the officers fired a shot through the Pontiac's rear window and windshield, and Englert dropped the rifle out of the car. The officers then forced the Pontiac off the road and arrested its occupants. Meanwhile, the body of Muriel Knox was discovered inside the bar lying near an open cash register containing pennies only; some dimes were scattered on the floor. The victim had been killed by a bullet which it was determined had been fired from the weapon dropped by Englert.

Geiger and Englert were each indicted and charged with murder of the first degree, robbery, and two counts of aggravated assault. Each filed a pretrial motion that the charge of murder of the first degree be quashed or, alternatively that it be reduced to murder of the second degree on the ground that the Commonwealth had no evidence of an intentional killing. See 18 Pa.C.S.A. § 2502(a) (Supp. 1977–78). The judge denied both motions. At their arraignment both defendants demanded trial by jury. In explaining the applicable law to the defendants, the judge expressed the view that if they were convicted by a jury of murder of the first degree, they might be subject to the death penalty, but, because this Court had promulgated no procedural rules for imposition of the death penalty in non-jury trials or guilty-plea proceedings, the court had no power to impose the death penalty in these contexts. See 18 Pa.C.S.A. § 1311 (Supp. 1977–78).

Subsequently, both defendants entered into plea-bargaining negotiations. Just prior to the scheduled jury selection, counsel for the defendants and the Commonwealth announced to the court that Geiger and Englert had both agreed to plead guilty to murder generally in exchange for the Commonwealth's promise to nol-pros the robbery and assault charges. The Commonwealth also agreed to certify that the homicide charge against Geiger rose no higher than murder of the second degree, but it indicated that it would seek to prove Englert guilty of murder of the first degree. After an extensive colloquy with each defendant to determine whether the pleas were knowing and voluntary, the judge accepted the pleas. At the conclusion of the consolidated degree-of-guilt hearing, he concluded that there was insufficient evidence of an intentional killing and that both defendants were guilty of felony-murder. See 18 Pa.C.S.A. § 2502(b) (Supp. 1977–78).

■ Initially, Geiger argues that the trial court erred in denying his pretrial motion to quash or reduce the murder charge and thus improperly coerced him into pleading guilty in order to avoid the possible imposition of the death penalty; he therefore contends that his plea was invalid and seeks a new trial on that basis. Although Geiger raised numerous assignments of error in his written post-verdict motions, this issue was not one of them. Accordingly, the issue has been waived, and we do not address ourselves to it. See *Commonwealth v. Carr*, 471 Pa. 86, 369 A.2d 1207 (1977); *Commonwealth v. Bailey*, 463 Pa. 354, 344 A.2d 869 (1975); *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Williams*, 459 Pa. 589, 330 A.2d 854 (1975).

■ Next, Geiger contends that the application to him of the felony-murder doctrine as codified in section 2502 of the Crimes Code unconstitutionally deprived him of due process, in that it enabled the Commonwealth to avoid having to prove every element of the crime of murder of the second degree beyond a reasonable doubt as required by *In re*

*Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Commonwealth must indeed prove every element of a crime beyond a reasonable doubt in order to sustain a valid conviction for that crime. *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974). See also *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). We conclude, however, that in the instant case the Commonwealth has sustained this burden.

The present version of section 2502 of the Crimes Code, applicable instantly, defines murder of the second degree in these terms:

"A criminal homicide constitutes murder of the second degree when the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony."

18 Pa.C.S.A. § 2502(a) (Supp. 1977–78). Section 2502(d) goes on to define "perpetration of a felony" as follows:

"The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping."

Geiger's argument is that since the Commonwealth presented evidence that he participated in a robbery but insufficient evidence that he participated in a homicide, the application of the felony-murder concept enabled the Commonwealth to avoid the constitutional requirement that it prove him guilty of murder beyond a reasonable doubt. Geiger, however, overlooks the fact that he pleaded guilty to murder generally. His plea, which in itself was sufficient to sustain a conviction for the lowest degree of murder, now murder of the third degree,[1] clearly obviated the need for further proof that he had committed a criminal homicide, as

---

1. Although Geiger states in his brief that the applicability of felony-murder to his case was basic to his decision to plead guilty, he does not argue that the alleged unconstitutionality of section 2502(b) is a ground for invalidating his plea of guilt to murder generally.

required by section 2502(b).[2] See *Commonwealth v. Moore*, 473 Pa. 169, 373 A.2d 1101 (1977). Thus, since to establish Geiger's guilt of murder of the second degree, the Commonwealth at the degree-of-guilt hearing was only required to prove beyond a reasonable doubt that "the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony," 18 Pa.C. S.A. § 2502(b) (Supp. 1977–78), we need not here determine whether, as Geiger argues, the traditional imputation of homicidal malice based upon proof only of a killing by a co-felon in furtherance of the underlying felony is a violation of due process.[3] See and compare *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972); *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958). We observe only that Geiger cites no authority to that effect.

Geiger does not dispute the court's conclusion that the death of Muriel Knox occurred in the course of an armed robbery in which he participated, but he urges that, since evidence tending to show that he was then intoxicated and had taken pills was presented at the degree-of-guilt hearing, the Commonwealth failed to prove beyond a reasonable doubt that he had the requisite specific intent to commit the robbery. See *Commonwealth v. Graves*, 461 Pa. 118, 334

2. "(a) Offense defined.—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.

"(b) Classification.—Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter." 18 Pa.C.S.A. § 2501.

3. Geiger argues, in an effort to preserve this constitutional issue, that the trial court erred in refusing to consider at his degree-of-guilt hearing two statements he made at the earlier guilty-plea colloquy to the effect that he did not personally kill anyone. We cannot conclude, however, the court erred in ruling that since Geiger elected not to testify at the consolidated degree-of-guilt hearing, at which the Commonwealth sought to prove his co-defendant Englert guilty of murder of the first degree, to consider these exculpatory statements would have been to violate Englert's right of confrontation. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

256

A.2d 661 (1975).[4] The trial judge, however, in his capacity as trier of fact considered and weighed the evidence of intoxication and rejected it. Furthermore, even though an examination of Geiger's blood subsequent to his arrest revealed alcohol in excess of the amount presumed to impair the ability to operate a motor vehicle, there was clearly sufficient eyewitness testimony in the record that Geiger's speech was clear and coherent, that his walk was not impaired, and that he acted with deliberation, to enable the trier of fact to conclude beyond a reasonable doubt that he had the specific intent to commit the armed robbery during which Muriel Knox was killed.

Finally, Geiger contends that various findings of fact and conclusions of law by the trial court were not supported by the evidence. We find these contentions to be without merit.

Judgment of sentence affirmed.

MANDERINO, J., concurred in the result.

4. Section 308 of the Crimes Code, 18 Pa.C.S.A. § 308 (Supp. 1977–78), now provides that voluntary intoxication or a voluntary drugged condition is no defense to a criminal charge but may be offered to reduce a higher degree of murder to a lower degree.