**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3988-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ERNEST M. PIERCE, III,
a/k/a ERNEST M. PIERCE,

    Defendant-Appellant.

_____

Submitted April 1, 2025 – Decided May 16, 2025

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 15-10-0509.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Kayla Rowe, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (David M. Galemba, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Ernest M. Pierce III appeals from the November 14, 2022 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Following a 2016 jury trial, defendant was convicted of first-degree carjacking, N.J.S.A. 2C:15-2; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); and two counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d).[1] He was sentenced to an aggregate term of twenty years in prison, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The convictions stemmed from an incident in which defendant, while high on K2,[2] believed that his stepdaughters, A.R.[3] and D.A.; his friend, T.B.; and

---

[1] Defendant was found not guilty of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a)(1), and third-degree terroristic threats, N.J.S.A. 2C:12-3(b).

[2] K2 or "Spice" is a synthetic form of marijuana that can cause "illusions, paranoia, catatonia, depersonalization, dissociation, and auditory and/or visual hallucinations." Rajashekar Reddy Yeruva et al., Synthetic Cannabinoids— "Spice" Can Induce a Psychosis: A Brief Review, Innovations in Clinical Neuroscience, Jan.-Feb. 2019 at 31-32.

[3] We use initials to keep the victims' identity confidential.

A-3988-22

T.B.'s friend, A.P., were setting him up for a robbery. As a result, defendant stabbed A.R. repeatedly at her Salem City apartment, and demanded T.B.'s car keys at knifepoint before fleeing in the vehicle. Defendant was later apprehended at a nearby hospital being treated for a stab wound to his shoulder.

We affirmed defendant's convictions and sentence in an unpublished opinion, and the Supreme Court denied certification. State v. Pierce, No. A-4251-16 (App. Div. Mar. 11, 2019) (slip op. at 2), certif. denied, 239 N.J. 505 (2019). As we recounted in our opinion, the State's evidence revealed that T.B. drove the group to A.R.'s apartment to socialize on the night of January 17, 2015. At some point after the group arrived at A.R.'s apartment,

> T.B. agreed to drive D.A. to a friend's house, so he and defendant walked down the ramp to the car. As T.B. entered the vehicle with keys in hand, another car drove alongside. Defendant abruptly turned and ran back toward the apartment. T.B. initially waited in his car for three or four minutes before going back inside himself. Once there, he heard a female voice say defendant had a knife and saw defendant accusing A.R. of "trying to [expletive] set [him] up[,]" and stabbing her. T.B. and A.P. ran out of the apartment as defendant pursued them, first, running toward A.P. who ran off down an alley, and then toward T.B.
>
> T.B. was standing "right on the corner of the apartment building, like right outside by the ramp." As defendant approached, T.B. asked, "Yo [b]ro, what are you doing?" Defendant waved a knife at T.B. and

3

yelled, "Give me the keys or I'll kill you." T.B. threw the keys at defendant and fled. Defendant drove off.

> It suffices to say that A.R. and A.P. testified and confirmed that defendant stabbed his stepdaughter.
>
> [Pierce, slip op. at 4 (alterations in original).]

Defendant's version of events differed vastly from this account. Defendant testified:

> A.P. attempted to rob him with a knife, and, in the course of the struggle, stabbed A.R. Defendant disarmed him and chased after A.P. When defendant realized he was stabbed in the shoulder, he pleaded with T.B. to take him to a hospital. T.B. refused, but threw defendant the keys to [the] car.
>
> [Id. at 4-5.]

Defendant filed a timely PCR petition through private counsel asserting ineffective assistance of trial and appellate counsel. Among other things, defendant claimed trial counsel was ineffective for (1) "not seeking a mental health evaluation for defendant," (2) "not traveling to or inspecting" the crime scene, which impaired counsel's ability to "effectively cross[-]examine the State's witnesses," and (3) failing to "sufficiently investigate and present certain evidence at trial" that would have raised reasonable doubt as to whether defendant acted purposefully.

4

Following oral argument, the PCR judge issued an oral opinion and entered an order denying defendant's PCR petition without an evidentiary hearing. The judge found defendant failed to establish a prima facie case of ineffective assistance of counsel (IAC). In rejecting defendant's IAC claim based on trial counsel's purported failure to investigate, relying on State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999), the judge found defendant failed to provide "affidavits, certifications and the like" to support his claim. Instead, according to the judge, defendant relied on "bald assertions." The judge noted he was "left to speculate" because defendant failed to make "even vague allegations" that "something could have been different" if counsel had conducted more investigation.

Likewise, regarding the IAC claim based on trial counsel's "failure to seek a mental health evaluation," the judge found no support for the claim. The judge expounded that "[d]efendant's use of [K2], in and of itself, [would not] necessarily . . . negate the culpable mental state . . . necessary" to sustain the convictions. Further, defendant had not pursued any affirmative defenses "[s]uch as diminished capacity or insanity . . . or a mental health deficiency" that would show defendant "lack[ed the] . . . capacity to be able to participate in his own defense." Additionally, there did not "appear to be a basis for such an

evaluation" since defendant had not shown that he had a mental disease. The judge concluded defendant failed to show that he was prejudiced by counsel's "failure to seek a mental health evaluation" because the record was "barren" of any evidence that doing so "would have in any way affected the case." This appeal followed.

On appeal, defendant raises the following points for our consideration:

POINT I

THE PCR COURT ERRED WHEN IT DENIED PCR, BECAUSE TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO INVESTIGATE EVIDENCE THAT WOULD HAVE NEGATED THE STATE'S PROOFS ABOUT [DEFENDANT'S] PURPOSE IN TAKING THE VEHICLE.

POINT II

THE PCR COURT ERRED IN DENYING PCR, BECAUSE TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PERSONALLY INSPECT THE LOCATION OF THE INCIDENT, UNDERMINING HIS UNDERSTANDING OF THE INCIDENT AND HIS ABILITY TO EFFECTIVELY CROSS-EXAMINE THE STATE'S WITNESSES.

POINT III

THE PCR COURT ERRED IN DENYING PCR, BECAUSE TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO SEEK A MENTAL HEALTH EVALUATION FOR [DEFENDANT].

6

POINT IV

AT A MINIMUM, [DEFENDANT] WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE RAISED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

II.

We begin by setting out the guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing," State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 421 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)); see also R. 3:22-10(e)(2)

(providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, [a] defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b). Moreover, a defendant must make this showing "by a preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002). Rule 3:22-2 recognizes five cognizable grounds for PCR, including a "[s]ubstantial denial in the conviction proceedings of [a] defendant's [constitutional] rights," R. 3:22-2(a), which encompasses the right to the effective assistance of counsel. State v. Nash, 212 N.J. 518, 541-42 (2013).

To establish a prima facie claim of the denial of the effective assistance of counsel as contemplated under R. 3:22-2(a), a defendant must demonstrate that the performance of counsel fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88

(1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions

9

regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with [defense] counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal "except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial."
>
> [State v. Castagna, 187 N.J. 293, 314-15 (2006) (second alteration in original) (citations omitted) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).]

To satisfy the second prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Failure to meet either prong of the two-pronged Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012) (citing State v. Echols, 199 N.J. 344, 358 (2009)). That said, "courts are

permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted) (citing Strickland, 466 U.S. at 697); see also Cummings, 321 N.J. Super. at 170 (explaining the burden rests on the defendant requesting an evidentiary hearing to "do more than make bald assertions that he was denied the effective assistance of counsel").

Applying these principles, we agree with the PCR judge that defendant failed to establish a prima facie IAC claim, and we discern no abuse of discretion in the judge's denial of defendant's PCR petition without an evidentiary hearing.

In Points I and II of his brief, defendant argues his trial counsel was ineffective because he failed to investigate: (1) the scene of the crime; (2) the motives of the victims and witnesses the night of the incident; and (3) the presence of "the mysterious car" that pulled up and made him suspicious. "The failure to conduct an adequate pre-trial investigation may give rise to a claim of [IAC]." State v. Russo, 333 N.J. Super. 119, 139 (App. Div. 2000). However, "when a petitioner claims his [or her] trial attorney inadequately investigated [the] case, [the petitioner] must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal

11

knowledge of the affiant or the person making the certification."  Cummings, 321 N.J. Super. at 170 (citing R. 1:6-6); see also Marshall, 148 N.J. at 270 ("PCR 'is not a device for investigating possible claims, but a means for vindicating actual claims.'" (quoting People v. Gonzalez, 800 P.2d 1159, 1206 (Cal. 1990))).

Here, as the PCR judge pointed out, defendant's claims are unsupported. Defendant provides no evidence that would have been uncovered, questions that could have been asked, or insights that would have been gleaned with additional efforts.  Further, defendant's trial testimony undercuts his argument that trial counsel failed to present his "perception of what happened" or to show that the others engaged in a conspiracy to rob him.  Trial counsel was limited to presenting a defense theory that aligned with defendant's testimony about the incident, a version of events the jury clearly rejected because it contradicted the other witnesses' accounts.  See State v. DiFerdinando, 345 N.J. Super. 382, 399 (App. Div. 2001) ("The jury is free to accept or reject, in whole or in part, any aspect of testimonial evidence based on credibility.").

In Point III, defendant argues that a "mental health evaluation would [have] explain[ed]" that he had a "break with reality" at the time of the crimes and "was not acting purposely or knowingly," the mental state the State had to prove.  Again, defendant provides no evidence or indication that he told trial

counsel about any mental health concerns during pre-trial preparation. See Strickland, 466 U.S. at 691 ("[W]hat investigation decisions are reasonable depends critically on . . . information [supplied by the defendant]."). Thus, defendant's claim amounts to a "bald assertion[] that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170.

To the extent defendant impliedly argues trial counsel should have pursued a possible diminished capacity defense, we reject the implication. See N.J.S.A. 2C:4-2 ("Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense."). To be entitled to a diminished capacity instruction, there must be evidence of (1) a diagnosed mental disease or disorder, and (2) a connection between that mental condition and the ability to form the requisite mental state for the crime charged. State v. Reyes, 140 N.J. 344, 364-65 (1995). Indeed, no evidence of mental disease or defect is "even admissible" unless it bears on whether the defendant had the requisite mental state to commit the crime. State v. Watson, 261 N.J. Super. 169, 178-79 (App. Div. 1992).

Here, defendant provides no evidence of a diagnosed mental disorder to support a diminished capacity defense or to justify a request for a mental health

evaluation. See id. at 179-80 (explaining that defendants must present expert opinion of a mental condition that impaired their cognitive faculties and prevented them from forming the requisite mens rea to claim a diminished capacity defense). Moreover, as "[i]ntoxication does not, in itself, constitute mental disease," N.J.S.A. 2C:2-8(c), defendant's voluntary intoxication on K2 does not eliminate the requirement for a diagnosed mental disease or disorder. See Reyes, 140 N.J. at 365 (holding that the interaction of the defendant's voluntary intoxication, violent personality, and sadness due to a breakup was insufficient for the defense); see also State v. Baum, 224 N.J. 147, 163 (2016) (holding that the defense was available to a defendant who "was intoxicated involuntarily due to . . . alcoholism and depression").

In any event, a diminished capacity defense would not have been a viable trial strategy given defendant's testimony. Defendant testified before the jury that the only negative side effects he experienced from smoking K2 were withdrawal symptoms similar to those of opiates, specifically "shaking, hot flashes, [and] cold flashes." While he acknowledged that those with lesser tolerances to K2 "might go crazy" from smoking it because "everybody has a different chemical reaction to it," defendant did not testify to experiencing paranoia, hallucinations, or a break from reality. Instead, he testified that only

A.P. started acting "weird" after smoking an additional blunt of K2 at the apartment, "st[anding] in the corner and . . . watching everybody." Under the circumstances, pursuing a diminished capacity defense would have undermined defendant's credibility and damaged his case, which was solely premised on his account that the others were setting him up for a robbery. Given the futility of this defense, defendant has not shown either Strickland prong. See State v. O'Neal, 190 N.J. 601, 619 (2007) (stating it is not IAC to pursue a meritless claim).

To the extent defendant is asserting his attorney should have pursued a voluntary intoxication defense, we likewise discern no merit to the argument. To successfully raise such a defense, a defendant must demonstrate that he or she was "so intoxicated" that he or she had no intent to commit an offense, "a state of affairs [that] will likely exist in very few cases." State v. Cameron, 104 N.J. 42, 54 (1986) (quoting State v. Stasio, 78 N.J. 467, 495 (1979) (Pashman, J., concurring in result only and dissenting)). Stated differently, a defendant must demonstrate "such a great prostration of the faculties [by intoxication] that the requisite mental state was totally lacking." Ibid. (quoting Stasio, 78 N.J. at 495).

Relevant factors include:

> [T]he quantity of intoxicant consumed, the period of time involved, the actor's conduct as perceived by others (what he said, how he said it, how he appeared, how he acted, how his coordination or lack thereof manifested itself), any odor of alcohol or other intoxicating substance, the results of any tests to determine blood-alcohol content, and the actor's ability to recall significant events.
>
> [Id. at 56.]

Here, the record shows defendant was not so intoxicated that he was incapable of forming the requisite intent. Although defendant stated he shared three "blunts" of K2 with A.P. and T.B., he provided clear and detailed testimony of the incident. In addition, police described defendant as "upset" and "despondent" at the hospital shortly after the incident, not erratic, confused, or belligerent, and there was no evidence of any blood or urine tests performed. Because the defense would not have been viable, defendant's IAC claim fails. See O'Neal, 190 N.J. at 619.

To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16

A-3988-22